# ERIE RAILROAD COMPANY v. WELSH.

## ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 29.    Argued October 25, 1916.—Decided December 18, 1916.

That a case may be within the Federal Employers' Liability Act (c. 149, 35 Stat. 65), it is essential that the person injured be employed at the time of injury in some task of interstate commerce; mere expectation of such employment is not enough.  So *held* where the employee, subject to be employed in either interstate or intrastate commerce as directed by a superior, was injured while in quest of orders, and, but for the injury, would have received orders requiring him immediately to make up an interstate train.

In cases brought here under the Federal Employers' Liability Act, the rule obtains that, in the absence of manifest error, this court will not disturb concurrent findings of state trial and appellate courts that the evidence of employment in interstate commerce was, insufficient to go to the jury.

89 Ohio St. 81, affirmed.

THE case is stated in the opinion.

*Mr. Leroy A. Manchester*, with whom *Mr. C. D. Hine, Mr. James B. Kennedy* and *Mr. John W. Ford* were on the brief, for plaintiff in error.

*Mr. William R. Stewart* for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

The Supreme Court of Ohio (89 Ohio St. 81) affirmed a circuit court judgment which sustained a judgment re-

covered in a court of common pleas by Welsh against the
Erie Railroad Company for damages on account of per-
sonal injuries suffered by him while in its employ as a yard
conductor in the Brier Hill yard, near Youngstown, Ohio;
overruling the contention of the defendant (now plaintiff
in error) that by certain rulings of the trial court defendant
had been deprived of rights secured to it by the Federal Em-
ployers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65.

Plaintiff's case was that on March 7, 1911, about 11
o'clock p. m., while in the performance of his duties, he
attempted to alight from the footboard of a slowly moving
locomotive; that in so doing he stepped upon a pulley
wheel of an interlocking mechanism situate between the
tracks and then covered with snow, and the turning of
the wheel under his weight caused his foot to become en-
tangled in the interlocking wires, as a result of which he
fell partly under the locomotive and sustained serious
injuries. The negligence attributed to defendant was the
failure properly to guard or cover the wires and the pulley
wheel. There was evidence tending to show such a knowl-
edge on plaintiff's part of the nature and character of the
interlocking apparatus and its location between the tracks,
and such a knowledge and appreciation of the dangers
incident thereto, as to bring into play the defense of
assumption of risk (*Seaboard Air Line Ry.* v. *Horton,* 233
U. S. 492, 503; *Jacobs* v. *Southern Railway Co.,* 241 U. S.
229, 234), if the case came within the federal act; and this
depended upon whether plaintiff was employed by de-
fendant in interstate commerce at the time he received
his injuries. Defendant's Fourth Request was for the
submission to the jury of the question whether plaintiff
was employed in such commerce, with an appropriate in-
struction embodying the rule as to assumption of risk in
case they should find him to have been so employed. This
request, which in terms invoked the protection of the act
of Congress, was refused, and the trial court, in the in-

structions given, declined to follow that act or the common law, and on the contrary instructed the jury that under a state statute held to be applicable the assumption of risk was not a defense.

The rulings of the trial court were sustained by the Supreme Court (and presumably by the Circuit Court) upon the ground that, upon the undisputed evidence, plaintiff was not at the time employed in interstate commerce. As to this question, there was testimony tending to show that defendant was a common carrier by rail engaged in commerce between the States, and that plaintiff was and for some time had been a yard conductor engaged in night duty at its Brier Hill yard, a mile or more west of Youngstown; that he performed miscellaneous services in the way of shifting cars and breaking up and making up trains, under orders of the yardmaster, and had to apply frequently to the latter for such orders; that when any orders thus given had been performed, or had "run out," he usually reported at the yardmaster's office for further orders; that on the night in question plaintiff, with a yard crew, took a freight car loaded with merchandise destined to a point without the State, and a caboose which so far as appears was not to go beyond the limits of the State, from the Brier Hill yard eastwardly to the "F. D. yard" in Youngstown, where the freight car was placed upon a siding, so that it might be made up into a train by another crew; that they then took the caboose a short distance farther and placed it upon another siding; that they next took the engine to a water plug and took on water, and then returned with it to the Brier Hill yard; that on this return journey the engine was slowed down near the yardmaster's office, which is at the easterly end of that yard, so as to enable Welsh to report for further orders, all previous orders having been executed; and that the injury was received while he was attempting to alight for that purpose.

It was in evidence, also, that the orders plaintiff would have received, had he not been injured on his way to the yardmaster's office, would have required him immediately to make up an interstate train. Upon the strength of this it is argued that his act at the moment of his injury partook of the nature of the work that, but for the accidental interruption, he would have been called upon to perform. In our opinion, this view is untenable. By the terms of the Employers' Liability Act the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act. *Illinois Central R. R. Co.* v. *Behrens*, 233 U. S. 473, 478.

There remains the contention that plaintiff's act in stepping from the yard engine was in completion of his trip to the "F. D. yard" with the interstate car, and hence was itself an act in furtherance of interstate commerce. This cannot be answered by saying, in the words used *arguendo* by the state Supreme Court (89 Ohio St. 88), that "he was not then and there employed in moving or handling cars engaged in interstate commerce." The question remains whether he was performing an act so directly and immediately connected with his previous act of placing the interstate car in the "F. D. yard" as to be a part of it or a necessary incident thereto. *New York Central & Hudson River R. R. Co.* v. *Carr*, 238 U. S. 260, 264; *Shanks* v. *Delaware, Lackawanna & Western R. R. Co.*, 239 U. S. 556, 559. And this depends upon whether the series of acts that he had last performed was properly to be regarded as a succession of separate tasks or as a single and indivisible task. It turns upon no interpretation of the act of Congress, but involves simply an appreciation of the testimony and admissible inferences therefrom in order to determine whether there was a question to be submitted to the jury as to the fact of employment

in interstate commerce. The state courts held there was no such question, and we cannot say that in so concluding they committed manifest error. It results that in the proper exercise of the jurisdiction of this court in cases of this character, the decision ought not to be disturbed. *Great Northern Ry. Co.* v. *Knapp*, 240 U. S. 464, 466.

*Judgment affirmed.*