## James F. Bishop, Administrator, Appellee, v. Chicago Junction Railway Company, Appellant.

### Gen. No. 23,832.

COMMERCE, § 4*—*when switching crew not engaged in interstate commerce.* Where a switching crew after delivering a cut of cars, concededly a task involving interstate commerce, returned to the yardmaster's quarters for the purpose of obtaining orders for future work, the crew while awaiting such orders was not engaged in interstate commerce, and an injury then sustained by one of the crew was governed by the Workmen's Compensation Act and not by the Federal Employers' Liability Act.

Appeal from the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Affirmed. Opinion filed October 16, 1918. Rehearing denied October 28, 1918. *Certiorari* denied by Supreme Court (making opinion final).

WINSTON, PAYNE, STRAWN & SHAW, for appellant; JOHN D. BLACK and A. LIDDON SHEPHERD, of counsel.

JAMES C. MCSHANE, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal the defendant seeks to reverse a judgment of the Circuit Court of Cook county awarding plaintiff compensation under the Workmen's Compensation Act of 1911 (J. & A. ¶ 5449 et seq.). The record discloses that Edward J. Flannery, plaintiff's intestate, was a switchman employed by the defendant, and while in such employ was killed by being run over by one of defendant's locomotives.

It is conceded that the sole question in this case is whether the deceased at the time of the accident was employed in interstate or intrastate commerce. If the former, the judgment must be reversed, as in that case the Federal Employers' Liability Act would govern; and if the latter, the judgment should be affirmed, as the State Workmen's Compensation Act would apply. There is no dispute as to the facts in the case.

It appears that the deceased at the time of the accident was a member of a switching crew employed by the defendant. The crew consisted of the engineer, fireman, conductor, head and rear switchman, the deceased being the rear switchman of the crew. Practically all the duties of this crew were performed in defendant's switching yards. The yards were about one mile in extent and were located between Ashland and Western avenues, and north of Forty-Third street in Chicago. The crew commenced working at 7 o'clock p. m. and worked until 7 o'clock the following morning. On the night of the accident they went to work as usual at 7 o'clock. The conductor at that time gave orders for the work the crew was to do, which he received from the yardmaster. There were about five main tracks and about thirty-six other tracks in the yards. The crew proceeded with their work and were engaged in switching cars for Swift & Company until about midnight. They then went to the roundhouse, which was located in the yards, got supplies for the engine,

ate their supper, and some time after one o'clock in the morning, having before that time received orders from the yardmaster, proceeded to take a cut of cars which were located in the yards to the Illinois Northern Railroad, a distance of more than 2 miles, and which was outside of and beyond the switching yards. After delivering these cars they started to return to the yards, and when they had reached a point a short distance east of Western avenue, the engine was stopped and the conductor went to a shanty located there, for the purpose of telephoning the yardmaster, who was located near Ashland avenue towards the east end of the yards, for the purpose of obtaining orders as to what work they would be next required to do. The conductor was not successful in reaching the yardmaster by telephone. He then returned to the engine and ordered the crew to proceed to the yardmaster's house so that he might there get orders for further work. The yardmaster's house was about three-quarters of a mile east of the shanty. When the engine came opposite the yardmaster's house, the conductor told the crew he would go into the house and get orders from the yardmaster, and ordered the engineer and the rest of the crew to proceed a short distance east and switch back on lead track No. 6 and wait there for him. The conductor then left the engine and started towards the yardmaster's house; the engine proceeded east and, after it had gone about 100 feet, the deceased said he would take his lanterns from the engine, as it was then daylight and they would be of no further use. As he was alighting from the engine he was run over and injured, as a result of which he died.

It is conceded that the crew in delivering the cut of cars to the Illinois Northern Railroad were engaged in interstate commerce, and it is contended by the defendant that the deceased was still so engaged at the time of the accident, for the reason that the return trip of the engine after delivering the cars to the Illinois

Northern was a part of the same task, which would not be completed until the engine had switched back on lead track No. 6. On the other side it is contended that the interstate task was completed when the engine had returned to the shanty where the conductor endeavored to telephone the yardmaster for further orders, or at most that it was completed when the engine and crew had proceeded from the shanty eastward to the yardmaster's house, a distance of a half or three-quarters of a mile, and where the conductor left the engine to secure further orders from the yardmaster.

We think it clear that anything done by the crew after it had returned to the shanty at the west end of the yards was not in completion of the interstate task, but was for the sole purpose of obtaining orders from the yardmaster as to the next task to be performed. We are therefore of the opinion that the trial court was not in error in holding that the deceased at the time of the accident was not engaged in interstate commerce. *Erie R. Co. v. Welsh,* 242 U. S. 303; *Chicago, R. I. & P. Ry. Co. v. Industrial Board,* 273 Ill. 529.

The judgment of the Circuit Court of Cook county is affirmed.

*Affirmed.*